IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANN FINCH, Individually and as Executrix of the Estate of Franklin Delano Finch, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:16-CV-1077 |
| BASF CATALYSTS LLC, sued individually and as successor-in interest to ENGLEHARD, et al., | ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiff, Ann Finch, has sued twelve defendants alleging that they are liable for personal injuries to and the wrongful death of her late husband, who allegedly developed mesothelioma from occupational exposure to asbestos. Defendant Pfizer asks the Court to strike the proffered report and testing of Sean Fitzgerald and to exclude him as an expert witness. Because Ms. Finch did not comply with the Rule 26 disclosure requirements or the scheduling order, the Court will grant Pfizer's motion. Ms. Finch also moves for spoliation sanctions against Pfizer. The Court will deny her motion because she has not established that Pfizer spoliated evidence.

### BACKGROUND

Franklin Finch, the plaintiff's late husband, worked at a Firestone tire factory in Wilson, North Carolina from 1975 to 1995. Doc. 238-1 at 6. Before his death, Mr. Finch

testified that he was exposed to asbestos while working at the tire factory. Doc. 238-1 at 8-15.

Ms. Finch contends that Pfizer sold asbestos-contaminated talc to this tire factory and that Mr. Finch's exposure to this talc contributed to his mesothelioma. Doc. 84 at ¶¶ 16-18; Doc. 210 at 2. Mr. Finch, however, did not testify that he worked with or was exposed to talc or talc products. *See* Doc. 238-1. Three of Mr. Finch's coworkers who were deposed did not testify to the use or presence of talc of any sort at the Wilson tire factory. *E.g.*, Doc. 287-2 at 4-5; Doc. 287-3 at 5-8; Doc. 287-4 at 4-6. It appears that Ms. Finch will attempt to prove Pfizer's liability by offering evidence that Mr. Finch's work badge had talc on it and that Pfizer failed to retain sales records that, had they been retained, would show it sold asbestos-contaminated talc to the Firestone factory.

## MR. FITZGERALD'S REPORT

In April 2016, the plaintiff sent Mr. Finch's Firestone identification badge to Sean Fitzgerald for testing. Doc. 210-1 at 1. In a May 2016 report, Mr. Fitzgerald stated that he tested the surface dust of the work badge "to determine if there were identifiable constituents and/or asbestos fibers in that dust." *Id*. He concluded that the dust on Mr. Finch's badge "had many asbestiform constituents, including fibrous talc." *Id.* at 3-4.

In November 2016, approximately six months after receiving the Fitzgerald report, Ms. Finch served her Rule 26 initial disclosures. Doc. 240-1. The disclosures did not list Mr. Fitzgerald as an individual with discoverable information likely to support her claim. *Id.* at 2-3. Nor did she disclose the existence of the work badge. *Id.* She did list Mr. Fitzgerald as an expert, but she did not describe the possible subjects of his testimony.

*Id.* at 36.  When the deadline came for the plaintiff to produce expert reports in October 2017, Docs. 47 and 48, she did not give Pfizer a copy of Mr. Fitzgerald's report.  Ms. Finch first disclosed the existence of the work badge and the Fitzgerald report when she attached the report to a motion for spoliation sanctions against Pfizer.  Doc. 210; Doc. 210-1.

Ms. Finch has stated that she does not intend to call Mr. Fitzgerald as a witness at trial.  Doc. 270 at 2-3.  Nonetheless, she offered Mr. Fitzgerald's report in support of a motion for spoliation, *see* Doc. 210-1, and she has not withdrawn this evidence in response to the motion to strike.  She also has indicated that she has amended disclosures for other expert witnesses to include opinions formed in reliance on Mr. Fitzgerald's testing and report.  Doc. 270 at 2; Doc. 270-1; Doc. 270-2.  Pfizer moves to strike the plaintiff's use of any testimony or reports generated by Mr. Fitzgerald and to exclude his testimony and report in connection with plaintiff's spoliation motion.  Doc. 239.

It is undisputed that Ms. Finch did not timely disclose Mr. Fitzgerald's report under the scheduling order governing expert witnesses and the Federal Rules.  Rule 26(a)(2) of the Federal Rules of Civil Procedure requires a party relying on expert testimony to disclose the identity of all its experts and, if the expert is retained or specially employed to provide expert testimony, to provide a written report identifying his opinions and the basis for them.  Fed. R. Civ. P. 26(a)(2)(A)-(B).  In their joint Rule 26(f) report adopted by the Court, the plaintiff was required to disclose expert reports by October 2, 2017.  Doc. 47; Doc. 48; *see also* L.R. 16.1(e) ("The [initial pretrial] order shall set the date on which disclosure of expert information under Fed.R.Civ.P 26(a)(2)

3

must be made."). Although Ms. Finch identified Mr. Fitzgerald as a potential expert in her November 2016 initial disclosures, she did not produce his report until March 2018, more than five months after the plaintiff's expert deadline and just a few days before the close of discovery. *See* Fed. R. Civ. P. 26(a)(2)(D) (stating that "[a] party must makes these disclosures at the times and in the sequence that the court orders").

Ms. Finch also seeks to use Mr. Fitzgerald's report more indirectly via testimony by other experts. However, she failed to disclose that she would use his report and the badge he tested as evidence in support of her claims, as required by Rule 26(a)(1). Rule 26(a)(1)(A)(i) requires parties to provide the name and contact information of "each individual likely to have discoverable information[,] along with the subjects of that information[,] that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Likewise, Rule 26(a)(1)(A)(ii) requires a party to describe "all documents . . . and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Nor, as the Court understands it, did any of these other experts initially indicate they would rely on Mr. Fitzgerald's report when they submitted their own expert reports and the amended reports were submitted after discovery closed. *See* Doc. 270 at 2 (noting that the plaintiff's expert witnesses were amending their reports to reflect the Fitzgerald report); Doc. 270-1; Doc. 270-2.

If Ms. Finch intended to use Mr. Fitzgerald's report to support her claims, whether directly through Mr. Fitzgerald's testimony or indirectly by providing it to another witness, Rule 26(a)(1)(A)(ii) required Ms. Finch to disclose the existence of the report to

Pfizer. She knew about the substance of Mr. Fitzgerald's information in November 2016, since she received his report six months earlier in May 2016. *See* Doc. 210-1 at 1. Yet Ms. Finch disclosed only Mr. Fitzgerald's name and contact information in her November 2016 initial disclosures. Doc. 240-1 at 36.

The plaintiff contends that Mr. Fitzgerald is not an expert and thus she was not required to disclose his report. This position is belied by her own motion for spoliation sanctions against Pfizer, which explicitly relies on Mr. Fitzgerald's report, Doc. 210 at 2, 8, and by her own Rule 26(f) disclosures listing Mr. Fitzgerald as an expert witness. Doc. 240-1 at 36. It further does not address her failure to disclose the report and badge as evidence supporting her claims, as required by Rule 26(a)(1)(A)(i) and (ii).

Under Rule 37(c)(1), a party that fails to provide information or identify a witness as required by Rule 26(a) cannot use "that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The district court has "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless[,]" and should consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Ms. Finch has not shown that her failure to comply with Rule 26(a) was substantially justified or harmless. The surprise to Pfizer was significant. The plaintiff did not disclose the existence of Mr. Finch's ID badge until March 2018, approximately 15 months after her initial disclosures. Doc. 210; Doc. 210-1; Doc. 240-1. She did not disclose Mr. Fitzgerald's expertise or the possible subjects of his testimony. Doc. 240-1 at 36. Likewise, she did not disclose Mr. Fitzgerald's report until months after the deadline for expert disclosures. Doc. 47; Doc. 48; Doc. 210-1.

Pfizer is not able to cure the surprise. It cannot depose Mr. Fitzgerald because discovery closed mere days after the plaintiff produced the report. Moreover, Pfizer cannot perform its own testing because Mr. Fitzgerald wiped the dust from the badge in a manner that likely renders retesting impossible. *See* Doc. 210-1 at 3.

Ms. Finch has not explained her failure to timely disclose the evidence. It is uncontested that she was aware of the existence of the badge and of the conclusions in the report months before serving her initial disclosures. Nor has she explained her failure to timely supplement her incomplete disclosures under Rule 26(e). *See* Fed. R. Civ. P. 26(e) (requiring supplementation of initial disclosures when "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and . . . the additional or corrective information has not otherwise been made known to the other parties").

Finally, while the report might be important evidence—it purports to provide evidence that Mr. Finch was exposed to talc, which could theoretically be part of a chain of evidence linking talc sold by Pfizer to Mr. Finch's mesothelioma—this is insufficient

to outweigh the other *Southern States* factors. Indeed, the more important the evidence, the less justification the plaintiff has for her failure to disclose it and the more prejudiced Pfizer would be if the evidence were allowed.

The Rules of Civil Procedure are clear: failure to tell other litigants about known evidence in support of a claim precludes a party from relying on that evidence, absent justification or lack of harm. Ms. Finch did not timely disclose Mr. Fitzgerald's report as an expert report and she did not disclose that she would use his report, his testing, or the badge to support her claims, in violation of Rule 26. She has not shown substantial justification or lack of harm for her failure to disclose. Therefore, she is precluded from using the report as evidence in connection with the spoliation motion or, directly or indirectly, at trial.

## PLAINTIFF'S SPOLIATION MOTION

Pfizer operated a talc factory in Victorville, California until 1987. Doc. 210-10 at 7-8, 12. Pfizer has a complete set of sales records for its talc products from 1978 until 1992, which it produced to Ms. Finch. Doc. 210-7 at 26. These records show no talc sales to the Wilson factory from 1978 going forward. Doc. 210-7 at 21-26. It has only a few records showing sales before 1978. Doc. 210-5 at 17-19, 28; Doc. 210-7 at 25-26 (indicating these records were produced to plaintiff).

The plaintiff contends that Pfizer failed to preserve evidence about its sales of talc between 1975 and 1977 and that Pfizer disposed of other shipping records about talc sales when closing a talc facility in 1987. She seeks an adverse inference "that Franklin Finch was exposed to talc sold and distributed by Pfizer." Doc. 210 at 1.

7

The first talc-related lawsuit was filed against Pfizer in 1986. Doc. 210-7 at 29. After that lawsuit, Pfizer implemented a litigation hold to preserve talc-related records. Doc. 210-7 at 29-30. Pfizer's record retention policy before the litigation hold was to keep its annual sales reports for six years and individual invoices for three years. *Id.*[1] Thus, when the first talc-related lawsuit was filed in 1986, records of pre-1978 sales were no longer available. *Id.*

In another lawsuit, a Pfizer employee testified that in 1988, he located certain sales records in the attic of a California local sales office. Doc. 210-5 at 17-19. He testified that these sales records referenced sales from 1969 to 1973 and included several sales of talc to a Firestone facility in South Gate, California. Doc. 210-5 at 17-19, 28.[2] These records were partially redacted, and the precise extent of the redaction is somewhat unclear. Doc. 210-5 at 17. Outside of these partially-redacted records, which have been produced to the plaintiff here, Pfizer does not have any end-of-year sales reports—or sales records of any kind—from before 1978. Doc. 210-7 at 25-26.

In 1987, Pfizer closed its Victorville, California talc facility. Doc. 210-7 at 19. An employee involved with shutting down the facility testified in another lawsuit that "[a]ny shipping documents that may have pertained to individual customers or individual shipments were disposed of at that time[.]" Doc. 210-11 at 41. That same employee also

---

[1] Although Pfizer had a policy of retaining annual sales records for six years, the format of its sales reports contained data from the two previous years. Doc. 210-7 at 29-30. Thus, Pfizer's 1980 sales report also contained data from 1978 and 1979. *Id.*

[2] These sales records were attached to the deposition and are currently in the plaintiff's possession.

8

testified that Victorville only retained bills of lading—i.e., shipping documents—for three years. Doc. 210-11 at 44.

To obtain an adverse inference based on spoliation of evidence, Ms. Finch must establish that: (1) Pfizer had a duty to preserve the evidence; (2) Pfizer destroyed evidence that would have been relevant to her claims; and (3) Pfizer "willfully" destroyed the evidence. *Turner v. United States*, 736 F.3d 274, 281-82 (4th Cir. 2013). As the moving party, Ms. Finch has the burden of proof. *Id.* at 282. "Spoliation is a rule of evidence" and the decision to impose sanctions for violations rests within the sound discretion of the trial court. *Id.* at 281.

In its discretion, the Court declines to grant Ms. Finch's motion for spoliation sanctions because Ms. Finch has proved none of the elements necessary to obtain an adverse inference based on evidence spoliation.

1. Duty to preserve

Ms. Finch has not established that Pfizer had a duty to retain pre-1978 sales records. The evidence shows that, before implementing a litigation hold in 1986 when it was first sued over talc, Pfizer adhered to its six-year document retention policy for sales records. *See* Doc. 210-7 at 26, 29-30. Accordingly, when the first asbestos-talc related lawsuit was filed against Pfizer, no sales records predating 1978 were available. Until a lawsuit was filed or it otherwise had notice that earlier records were reasonably likely to be relevant, Pfizer had no duty to retain these records. *See Turner,* 736 F.3d at 282 ("Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence.").

9

Ms. Finch contends that Pfizer had a duty to implement a litigation hold before the filing of the first talc-related suit in 1986 because in 1980 some employees expressed concern in internal memoranda that the talc might be contaminated with asbestos. She relies on *Silvestri v. Gen. Motors Corp.*, where the Fourth Circuit found that the "duty to preserve material evidence . . . extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." 271 F.3d 583, 591 (4th Cir. 2001).

Here, however, the memoranda that Ms. Finch cites, Docs. 210-8 and 210-9, show no more than a generalized concern about possible litigation and are insufficient to trigger a company-wide duty to preserve evidence. *See Realnetworks, Inc. v. DVD Copy Control Ass'n*, 264 F.R.D. 517, 526 (N.D. Cal. 2009) ("A general concern over litigation does not trigger a duty to preserve evidence."). Ms. Finch has not shown that Pfizer reasonably should have known that the pre-1978 records may have been relevant. *See Silvestri,* 271 F.3d at 591.

Ms. Finch also asserts that when Pfizer closed its Victorville, California facility in 1987, "Pfizer destroyed the only copies of the information reflected in the shipping documents and made no effort to preserve any of the shipping and sales documents that it may have saved on its computer system." Doc. 210 at 5. She contends that this justifies a spoliation sanction.

This argument is without merit. The destroyed shipping documents were from 1984 through 1987, *see* Doc. 210-11 at 41, 43-44, and Pfizer maintained other sales records containing the same information. Doc. 210-7 at 26 (Pfizer maintained complete

sales records for its talc products from 1978 to 1992). Given this, Pfizer did not breach its obligation "to preserve unique, relevant evidence that might be useful to an adversary." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 524 (D. Md. 2010) (internal quotation omitted).

Finally, without citation to any evidence, Ms. Finch asserts that "Pfizer made no effort to safeguard against the loss of documents when it updated its computer system in 2000." Doc. 210 at 7. Statements in a brief are not evidence. *See INS. v. Phinpathya*, 464 U.S. 183, 188 n. 6 (1984) (declining to consider "[c]ounsel's unsupported assertions in respondent's brief" as evidence). Further, the evidence shows that Pfizer sold its talc business in 1992 to an independent business, and thus did not own the business in 2000 when Ms. Finch says the records were destroyed. *See* Doc. 210-10 at 29; Doc. 210-7 at 19. Ms. Finch offers no legal or factual support for penalizing Pfizer with a spoliation instruction for actions taken by someone else, and this argument borders on the frivolous.

2. Relevance

Ms. Finch has not demonstrated that the missing records would have supported her claims. "The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 180 (D. Md. 2008) (internal quotation omitted). She seeks an inference that the spoliated records would have proved "that Franklin Finch was exposed to talc sold and distributed by Pfizer." Doc. 210 at 1. Her contention is without merit for several reasons.

Mr. Finch was employed at Firestone from 1975 to 1995. Doc. 238-1 at 6. Pfizer has complete sales records from 1978 to 1992, Doc. 210-7 at 26, which contain no record of any talc sales to the Wilson tire factory. *Id.* at 21-26. Although Ms. Finch contends that Pfizer should have retained the Victorville, California shipping records, it is not clear how these records are relevant. The Victorville records appear to cover only a period from 1984 to 1987 and the record is clear that these records do not predate 1978. *See* Doc. 210-11 at 41, 43-44. Pfizer has complete sales records for this period, containing the same relevant information. *See* Doc. 210-7 at 26. Ms. Finch has not explained what information the shipping records would contain that the sales records do not.

Additionally, the plaintiff does not show that Mr. Finch ever worked with talc at Firestone's plant. Mr. Finch did not testify that he was ever exposed to talc. *See* Doc. 238-1. Nor did Mr. Finch's three co-workers that were deposed testify that Mr. Finch was exposed to talc. *E.g.*, Doc. 287-2 at 4-5; Doc. 287-3 at 5-8; Doc. 287-4 at 4-6. The Court excluded Mr. Fitzgerald's report—purporting to have found talc dust on the surface of Mr. Finch's work badge—on the basis that it was untimely and violated Federal Rule of Civil Procedure 26(a) and this Court's scheduling order. *Supra.* Accordingly, even if there were records showing that Pfizer's talc was shipped to the Wilson tire factory, the plaintiff produces no evidence that Mr. Finch was exposed to talc.

For these reasons, the plaintiff has not established "a reasonable possibility, based on concrete evidence rather than a fertile imagination," that the allegedly spoliated evidence would have supported the inference she seeks. *Sampson*, 251 F.R.D. at 180.

3. Willfulness

Ms. Finch has not shown that Pfizer willfully destroyed evidence or records that it knew it had a duty to preserve. *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) (noting that an adverse "inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction"). Because Pfizer had no duty to retain documents from 1975 to 1977, as the Court found *supra*, it did not act willfully in destroying those documents years before litigation began. *See Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 820 (E.D.N.C. 2008) ("Destruction is willful when it is deliberate or intentional."). Even if a duty exists to retain duplicative documents, the Court concludes that Pfizer's conduct was not willful because it kept other documents that provide the same information. Doc. 210-7 at 26.

## CONCLUSION

In its discretion, the Court will grant Pfizer's motion to strike Mr. Fitzgerald's report and testing because Ms. Finch did not comply with Rule 26 or with the Court's scheduling order and she has not shown that her failure was substantially justified or harmless. The Court will deny Ms. Finch's motion for spoliation sanctions because she has not shown that Pfizer had a duty to preserve the evidence that she seeks, much less that much of the evidence was relevant, or that Pfizer destroyed said evidence willfully.

It is **ORDERED** that the plaintiff's motion for spoliation sanctions, Doc. 210, is **DENIED**. It is **FURTHER ORDERED** that the defendant's motion to strike the

proffered report and testing of Mr. Fitzgerald and to exclude Mr. Fitzgerald as a putative expert witness, Doc. 239, is **GRANTED.**

This the 8th day of June, 2018.

_____
UNITED STATES DISTRICT JUDGE