IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANN FINCH, Individually and as Executrix of the Estate of Franklin Delenor Finch, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:16-CV-1077 |
| BASF CATALYSTS LLC, et al., | ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiff, Ann Finch, has sued twelve defendants claiming that they are liable for personal injuries to and the wrongful death of her late husband, who allegedly developed mesothelioma from occupational exposure to asbestos. Defendant Covil moves for summary judgment and seeks to strike certain evidence that the plaintiff submitted as obtained outside the discovery schedule.

Ms. Finch has produced sufficient evidence of exposure to asbestos-containing products that Covil sold, and her failure to warn and negligence claims may proceed to trial. However, the Court will grant summary judgment as to all claims arising out of Mr. Finch's alleged exposure to asbestos-containing products while he was a Covil employee, the product liability claims based on inadequate design or formulation, the breach of implied warranty claim, the negligence claims to the extent those claims are based on premises liability and negligent retention and/or supervision, and the loss of consortium

damages and punitive damages.  The motion to strike will be denied, as the evidence at issue was timely obtained under the court-approved discovery schedule.

## BACKGROUND

Franklin Finch, the plaintiff's late husband, worked at a Firestone tire factory in Wilson, North Carolina from 1975 to 1995.  Doc. 306-1 at 6.  Before his death, Mr. Finch testified that he was exposed to asbestos while working in the curing room at the tire factory, *e.g.,* Doc. 306-1 at 8–15, where approximately 120 tire presses were used.  Doc. 306-1 at 8, 15.  Ms. Finch contends that Covil sold asbestos-containing insulation to Firestone's Wilson plant and that this insulation was used on steam lines in the curing room.  Covil contends that the plaintiff does not have sufficient evidence of exposure to Covil's asbestos-containing products to raise a disputed question of material fact and, in the alternative, makes other more limited arguments as to specific causes of action.

## ANALYSIS

### I.  The Motion to Strike

In opposition to summary judgment, the plaintiff submitted answers by non-party Bridgestone[1] to deposition by written questions.  Doc. 306-26.  Covil moves to strike these answers, contending this discovery was untimely and violated the Court's scheduling order.  The Court will deny Covil's motion.  Magistrate Judge Peake extended the discovery deadline until May 11 for certain discovery issues, including the plaintiff's

---

[1] Oversimplifying somewhat, Bridgestone is the successor to Firestone and the questions concerned the plant in Wilson where Mr. Finch worked.  Bridgestone's answers are referenced in this opinion as coming from Firestone, since that is where Mr. Finch worked.

discovery dispute with Bridgestone. Doc. 263 at 3, 6 (extending discovery until May 11, 2018, "solely as to the matters addressed" in the order). Bridgestone responded on April 26, Doc. 306-26, well before that deadline.

## II. Liability based on exposure while employed at Covil

Before he began working at the Wilson tire plant in 1975, Mr. Finch worked directly for Covil as a truck driver and warehouse manager from 1969 to 1973. Doc. 306-1 at 16–17. To the extent the plaintiff's claims are based on asbestos exposure while Mr. Finch worked for Covil, Covil is entitled to summary judgment.

The North Carolina Workers' Compensation Act provides the exclusive remedy for claims related to Mr. Finch's employment with Covil. N.C. Gen. Stat. Ann. §§ 97-9, -10.1 (West 2018). Ms. Finch makes no argument to the contrary, Doc. 306 n.1, and she agreed at oral argument that any exposure during this time frame could not be a basis for liability. Thus, she has abandoned this claim. *See Taylor v. City of New York,* 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003), *order clarified,* No. 01-CV-5750 (ILG), 2003 WL 21781941 (E.D.N.Y. July 29, 2003). ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.")

## III. Liability based on exposure at the Firestone Plant

### A. Exposure

To be successful on any of her claims, Ms. Finch must prove that Covil sold asbestos-containing insulation to the Wilson tire plant and that this insulation was used in the curing room where Mr. Finch worked daily for many years.

3

The initial dispute centers on whether Ms. Finch has proffered evidence that some of the pipes in the curing room were covered with insulation that Covil sold. According to Firestone, Covil supplied "all of the asbestos insulation used in the plant during construction," with only limited exceptions. Doc. 306–26 at 7. Firestone also confirmed that Covil's insulation was installed in the tire press area. *See id.* (asserting that only one other contractor was involved with insulation in the tire press area and that this was limited to a single job involving six presses). At least one invoice from Covil to Firestone appears to show that a shipment of Kaylo insulation[2] was designated for the "curing area" where Mr. Finch worked. Doc. 306-17 at 3. Additionally, Covil's corporate representative agreed—from the paperwork he had seen—that Covil was "the only supplier" of insulation to the Wilson tire factory. Doc. 306-10 at 32–33. In short, there is sufficient evidence for a reasonable jury to conclude that Covil supplied some or all of the insulation in the curing room.

The next dispute concerns whether this insulation contained asbestos. Ms. Finch proffers several pieces of circumstantial evidence to support her contention that it did.

First, Covil's president during the relevant time, Palmer Covil, testified in another lawsuit that Covil last sold an asbestos-containing product sometime around 1973. Doc. 306-6 at 96–97. Second, Owens-Corning sold Kaylo to Covil for use in the curing area at the Wilson plant at least once during the time the plant was built from 1973 to 1974. Doc. 306-17 at 3.

---

[2] Kaylo is a form of pipe insulation that Owens-Corning manufactured. Docs. 306-7 at 84; 317-1. All Kaylo manufactured before November 1972 contained asbestos. *See* Doc. 317-1.

Next, there is evidence that Covil had the asbestos-containing insulation marketed as "Kaylo" in its inventory around the time the Wilson plant was built. Owens-Corning continued shipping "Kaylo . . . contain[ing] asbestos fibers[] for . . . several months" after it ceased manufacturing asbestos-containing Kaylo in November 1972. Doc. 317-1. And Covil generally took between one and three years to clear its inventory. Doc. 306-10 at 22; Doc. 306-6 at 97. Covil's corporate representative explicitly agreed that it would take at least a year for Owens-Corning to "get rid of their inventory [of asbestos-containing Kaylo]" and another "year to get rid of Covil's inventory [of asbestos-containing Kaylo]." Doc. 306-10 at 23. Arguably, the time-frame for clearing the Kaylo inventory matches up to the time the Firestone plant was being built.

In addition, and most importantly, Ms. Finch has documentary evidence that Firestone removed approximately 7400 linear feet of asbestos-containing pipe insulation from the tire press area in 1990. Doc. 306-22 at 2–3. According to Firestone, no insulation in the tire press area was replaced before the 1990 asbestos abatement. Doc. 306-26 at 9. So this evidence gives rise to the inference that the original insulation, which Covil supplied in 1973 and 1974, remained in the tire press area until abatement in 1990 and that this insulation contained asbestos. While Covil points out that there is no evidence this removed material was tested for asbestos content, a reasonable jury could conclude that Firestone would not have hired and paid an asbestos contractor—particularly one using "full decon[tamination] procedures"—to remove material that did not contain asbestos. *See* Doc. 306-22 at 2.

5

Covil's contentions go to the weight and credibility of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting "at the summary judgment stage the judge's function is not [ ] to weigh the evidence and determine the truth of the matter"). A reasonable jury could conclude that Covil sold the insulation in the curing room where Mr. Finch worked and that this insulation contained asbestos. To the extent Covil's motion is based on a contention that the plaintiff cannot prove Mr. Finch was exposed to Covil's asbestos-containing products, the motion is denied.

### B. Negligence

The defendant makes no other argument beyond lack of exposure to Covil's asbestos-containing products as to Ms. Finch's negligence claim. *See generally* Doc. 277. Summary judgment is therefore denied as to the ordinary negligence claim.

### C. Failure to Warn Claims

To the extent Covil contends it is entitled to summary judgment on the failure to warn claims because Ms. Finch has not produced evidence that Covil knew of the dangers associated with its products or that others would have acted differently had warnings been given, *id.* at ¶¶ 118–126, the Court denies summary judgment. Covil has the burden to show that there are no disputed questions of material fact,[3] and a cursory

---

[3] The moving party has the initial burden of demonstrating the absence of any material issue of fact. Only then does the burden shift to the non-moving party to come forward with evidentiary material demonstrating the existence of a genuine issue of material fact requiring a trial. *Ruffin v. Shaw Indus., Inc.*, 149 F.3d 294, 300–01 (4th Cir. 1998) (per curiam) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) and *Anderson*, 477 U.S. at 248–49).

argument without citation to evidence, *see* Doc. 277 at 16, is insufficient to meet that burden.

### D. Product Liability Claims for Inadequate Design or Formulation

Covil is entitled to summary judgment on Ms. Finch's product liability claims based on inadequate design or formulation. Doc. 150 at ¶¶ 57–64. This theory of liability applies only to manufacturers, N.C. Gen. Stat. Ann. § 99B-6(a) and § 99B-1(2) (West 2018), and Covil has submitted evidence that it did not manufacture any products supplied to the Firestone plant. *E.g.*, Doc. 277-9 at 3. Ms. Finch has not disputed this evidence, made any argument explaining how these legal theories apply to the evidence in this case, or directed the Court's attention to evidence in support of these claims. Indeed, she has not addressed Covil's motion as to this claim in any way. She has thus abandoned this claim. *See Taylor,* 269 F. Supp. 2d at 75.

### E. Breach of Implied Warranty Claim

North Carolina law requires privity of contract for breach of implied warranty claims unless the barrier of privity has been legislatively or judicially removed. *Nicholson v. Am. Safety Util. Corp.*, 124 N.C. App. 59, 68, 476 S.E.2d 672, 678 (1996), *aff'd as modified,* 346 N.C. 767, 488 S.E.2d 240 (1997). While the legislature has eliminated the privity requirement for implied warranty claims against the manufacturer, *id.; see also* N.C. Gen. Stat. Ann. § 99B-2(b) (West 2018), as just noted it is undisputed that Covil did not manufacture any products supplied to the Firestone plant.

Ms. Finch contends she can recover for breach of implied warranty despite a lack of privity under N.C. Gen. Stat. § 99B-2(a) because Covil did not sell the insulation in

7

sealed containers. However, the evidence shows that many shipments to the Firestone plant were directly from the manufacturer and there is otherwise no evidence that the asbestos-containing materials that Covil shipped to the Firestone plant were not in sealed containers. Evidence that at some unspecified time Covil sold insulation to other plants in repackaged containers is insufficient, by itself, to establish that Covil did the same in sales to the Firestone plant. Covil is entitled to summary judgment on this claim.

### F. Premises Liability Claims

Covil is entitled to summary judgment on Ms. Finch's negligence claim to the extent that it is based on premises liability. To state a prima facie negligence claim of premises liability, she must show that Covil had control over the area where Mr. Finch worked—*i.e.*, that Covil had control over the curing room. In other words, "control is a prerequisite of liability." *Wilkerson v. Norfolk S. Ry. Co.*, 151 N.C. App. 332, 343, 566 S.E.2d 104, 111 (2002) (quoting *Mack v. Marshall Field & Co.,* 218 N.C. 697, 700, 12 S.E.2d 235, 237 (1940)); *see also Petty v. City of Charlotte,* 85 N.C. App. 391, 395, 355 S.E.2d 210, 213 (1987) ("The fact of possession or occupation underlies most forms of premises liability.").

Here, there is no evidence that Covil exercised control over Mr. Finch's work area. No evidence suggests that Covil installed insulation or performed any maintenance on the insulation in the tire plant after initial construction. In fact, the record evidence shows that another contractor installed the pipe insulation on the steam lines in the curing room. Doc. 277-8. Moreover, Covil's involvement at the Firestone plant did not overlap with Mr. Finch's employment: Covil's last invoice is from December 1974. Doc. 220-1 at 2.

8

Mr. Finch did not begin working at Firestone until December 1975. In short, there is no evidence that Covil performed work in the curing room area while Mr. Finch was present.

Ms. Finch's only evidence is a Firestone document indicating that Covil installed some overhead piping for Firestone. Doc. 306-25 at 3. This document does not specify when or where this work took place or whether the work involved steam pipes or insulation. This is insufficient to create a fact issue. No reasonable jury could conclude that Covil actually performed any work in or exercised control over Mr. Finch's work area, particularly when Covil's last invoice is dated from December 1974 and Mr. Finch did not begin work at the tire plant until December 1975. Because control is a legal prerequisite for premises liability, Covil is entitled to summary judgment. *See, e.g., Wilkerson*, 151 N.C. App. at 343, 566 S.E.2d at 111.

Without evidence to show that Covil exercised control over Mr. Finch's work area, Ms. Finch seeks a spoliation adverse inference to stave off summary judgment. A party seeking sanctions must establish that the alleged spoliator had a duty to preserve evidence and that it thereafter destroyed relevant evidence. *Turner v. United States*, 736 F.3d 274, 281–82 (4th Cir. 2013).[4]

Ms. Finch has not met this burden. She provides scant factual support for her cursory spoliation argument. The few evidentiary citations are exaggerated and most

---

[4] To obtain an adverse inference based on spoliation of evidence, Ms. Finch must establish that: (1) Covil had a duty to preserve the evidence; (2) Covil destroyed evidence that would have been relevant to her claims; and (3) Covil "willfully" destroyed the evidence. *Turner*, 736 F.3d at 281–82. As the moving party, Ms. Finch has the burden of proof. *Id.* at 282. "Spoliation is a rule of evidence" and the decision to impose sanctions for violations rests within the sound discretion of the trial court. *Id.* at 281.

factual assertions are not supported by any citation to evidence. *See* Doc. 306 at 17–18. This violates both the Local Rules, *see* L.R. 7.2(a)(2), and this Court's orders. Doc. 32 at ¶ 1 (noting that "factual assertions unsupported by citation to specific evidence in the record will be disregarded"). Statements by counsel in a brief are not evidence. *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir. 1995) (holding jury was properly instructed that counsel's statements are not evidence); *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.").

### G. Negligent Retention and Supervision Claims

Covil is entitled to summary judgment on Ms. Finch's negligence claims to the extent those claims are based on negligent construction, retention, and supervision. Ms. Finch has not discussed much less directed the Court's attention to evidence supporting each element of these torts. In fact, she has not addressed Covil's motion for summary judgment as to these claims in any substantive way. Therefore, the Court finds that she has abandoned this claim. *See Taylor,* 269 F. Supp. 2d at 75; *see also Catalan v. House of Raeford*, 17 F. Supp. 3d 520, 525 (E.D.N.C. 2014) (facts in moving party's summary judgment motion which are unaddressed or unrebutted are considered uncontroverted for purposes of the motion).

## IV. Loss of Consortium Claim

Covil is entitled to summary judgment on Ms. Finch's loss of consortium claim. "[T]he tort claim for 'loss of consortium', no matter what damages may be recovered thereunder, is covered under the wrongful death statute, and plaintiff may not, therefore, bring an independent claim for loss of consortium in this action." *Keys v. Duke Univ.*,

112 N.C. App. 518, 522, 435 S.E.2d 820, 822 (1993). Ms. Finch makes no argument to the contrary, Doc. 306, and agreed at oral argument that this claim should be dismissed.

### V. Punitive Damages

Ms. Finch seeks punitive damages, contending that Covil knew asbestos-containing insulation was dangerous when it sold such insulation to the Firestone plant and that Covil's failure to warn or use alternative insulation was willful and wanton. The Court will grant summary judgment because Ms. Finch has not created a material issue of fact as to willful and wanton conduct.

Under North Carolina law, punitive damages may only be awarded when a plaintiff proves that an aggravating factor is present and relates to the injury. N.C. Gen. Stat. Ann. § 1D-15(a) (West 2018). Ms. Finch contends she has evidence of the aggravating factor of willful and wanton conduct, which is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm" and "means more than gross negligence." N.C. Gen. Stat. Ann. § 1D-5(7) (West 2018). A general awareness of danger is not enough to establish a conscious disregard of a known duty. *Lee v. CertainTeed Corp.*, No. 5:13-CV-826-FL, 2015 WL 4526165, at *11 (E.D.N.C. July 27, 2015).

A plaintiff must prove a claim of punitive damages by clear and convincing evidence. *Cockerham-Ellerbee v. Town of Jonesville*, 190 N.C. App. 150, 151, 660 S.E.2d 178, 179 (2008); N.C. Gen. Stat. Ann. § 1D-15(b). To survive summary judgment, a plaintiff must "produce a forecast of evidence demonstrating that the plaintiff

11

will be able to make out at least a *prima facie* case at trial." *George v. Greyhound Lines, Inc.*, 210 N.C. App. 388, 392, 708 S.E.2d 201, 204 (2011) (quotation marks omitted).

Ms. Finch contends that Covil acted willfully and wantonly by failing to warn of the dangers of asbestos. However, her evidence on this point does not go beyond, at best, gross negligence. *Cf. Vandevender v. Blue Ridge of Raleigh, LLC*, No. 17-1900, 2018 WL 3689249, at *4–5 (4th Cir. Aug. 2, 2018) (finding willful and wanton conduct where nursing facility illegally cut staffing levels and ignored repeated warnings about the risks of death or serious injury to patients). At best, she can establish that Covil was generally aware asbestos had health risks. But knowledge of "broad statements about potential harms under undefined conditions" is insufficient to show willful and wanton misconduct. *See Yates v. Air & Liquid Sys. Corp.*, No. 5:12-CV-752-FL, 2014 WL 4923603, at *20 (E.D.N.C. Sept. 30, 2014), *on reconsideration on other grounds sub nom. Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 9222834 (E.D.N.C. Dec. 17, 2015). Covil's failure to provide additional warnings on the asbestos-containing products that it sold does not satisfy the "extremely high standard" under North Carolina law for punitive damages. *Smith v. Am. Honda Motor Corp.*, No. 14-CV-943, 2016 WL 1312541, at *3 (M.D.N.C. Apr. 4, 2016).

Ms. Finch also contends that Covil acted willfully and wantonly by selling asbestos-containing products in boxes labeled "asbestos-free." *See Yates*, No 5:12-CV-752-FL, 2014 WL 4923603, at *21 (indicating "concealment or misrepresentation of facts regarding the dangers of asbestos" from its products may be sufficient to support punitive damages). The testimony on which she relies, however, concerned products that

12

Covil supplied to Duke Power and BASF. Doc. 306-5 at 17–19. There is no evidence to suggest that this occurred at the Firestone tire plant and North Carolina law is clear that the alleged misconduct must have a "nexus to the specific harm suffered by the plaintiff." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003); N.C. Gen. Stat. Ann. § 1D-15(a) (noting that the aggravating factory must be "related to the injury for which compensatory damages were awarded"). Moreover, Ms. Finch has not directed the Court to any evidence that Covil's officers, directors, or managers condoned this conduct. *See* N.C. Gen. Stat. Ann. § 1D-15(c) (a plaintiff must demonstrate that "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages."); *Miller v. B.H.B. Enters., Inc.*, 152 N.C. App. 532, 539–40, 568 S.E.2d 219, 225 (2002) (defining "manager" as "one who conducts, directs, or supervises something."). Mr. Waters' testimony by itself is insufficient to support a claim for punitive damages.

The Court will grant summary judgment because Ms. Finch has not created a material issue of fact as to her punitive damages claim against Covil.

It is **ORDERED** that the defendant Covil Corporation's motion for summary judgment, Doc. 276, is **GRANTED** in part and **DENIED** in part as follows:

1. Summary judgment is **GRANTED** as to any claim based on Mr. Finch's exposure to asbestos while employed by Covil;

2. Summary judgment is **DENIED** as to the negligence claim based on Mr. Finch's exposure to asbestos-containing products provided by Covil while Mr. Finch worked at the Firestone plant (Claim 1, Doc. 150 at ¶¶ 36–56);

3. Summary judgment is **DENIED** as to the plaintiff's failure to warn claims (Claim 6, Doc. 150 at ¶¶ 118–126);

4. Summary judgment is **GRANTED** as to the plaintiff's product liability claims for inadequate design or formulation (Claim 2, Doc. 150 at ¶¶ 57–64);

5. Summary judgment is **GRANTED** as to the breach of implied warranty claim (Claim 3, Doc. 150 at ¶¶ 65–69);

6. Summary judgment is **GRANTED** on the plaintiff's negligence claims to the extent those claims are based on premises liability (Claim 7, Doc. 150 at ¶¶ 127–135) and negligent retention and/or supervision (Claim 4, Doc. 150 at ¶¶ 70–99);

7. Summary judgment is **GRANTED** as to the plaintiff's claim for loss of consortium damages (Doc. 150 at ¶¶ 136–138);

8. Summary judgment is **GRANTED** as to the plaintiff's claim for punitive damages (Claim 5, Doc. 150 at ¶¶ 100–117).

It is **FURTHER ORDERED** that the defendant Covil's motion, Doc. 318, to strike Exhibit 26 to the plaintiff's brief in opposition is **DENIED**.

This the 16th day of August, 2018.

_____
UNITED STATES DISTRICT JUDGE