IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANN FINCH, Individually, and as Executrix of the Estate of Franklin Delenor Finch,<br><br>Plaintiff,<br><br>vs.<br><br>BASF CATALYSTS, LLC, et al.,<br><br>Defendants. | 1:16-CV-01077-TDS-JEP |

### DEFENDANT REXNORD INDUSTRIES, LLC ON BEHALF OF ITS STEARNS BUSINESS' RULE 26(a)(3) PRE-TRIAL DISCLOSURES

Defendant Rexnord Industries, LLC, on behalf of its Stearns business (hereinafter "Stearns"), by and though its attorneys, and hereby submits the following pre-trial disclosures pursuant to Rule 26(a)(3) of the Federal Rules of Civil Procedure:

**i)** **THE NAME AND, IF NOT PREVIOUSLY PROVIDED, THE ADDRESS AND TELEPHONE NUMBER OF EACH WITNESS-SEPARATELY IDENTIFYING THOSE THE PARTY EXPECTS TO PRESENT AND THOSE THE PARTY MAY CALL IF THE NEED ARISES.**

At this time, Stearns expects to call the following witnesses at trial:

**1. RAYMOND MAZUREK**
c/o Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611

Mr. Mazurek was the former Sales Manager for Rexnord Industries LLC.'s Stearns business. In his capacity as Sales Manager, Mr. Mazurek is knowledgeable about and is expected to testify regarding the history and design of Stearns industrial brakes and clutches. He is also expected to testify regarding the operation, repair and maintenance of Stearns industrial brakes and clutches. Mr. Mazurek is expected testify that Stearns industrial brakes and clutches incorporated friction discs, manufactured by its suppliers, that may have contained encapsulated chrysotile asbestos for a period of years. In addition, Mr. Mazurek is expected to testify regarding the absence of asbestos

free substitutes for the friction brake and clutch discs utilized in its industrial brakes and clutches. Mr. Mazurek is also expected to testify as to his knowledge and the historical corporate knowledge of Stearns concerning the hazards of asbestos. He may testify to all matters discussed and covered in his depositions taken by or produced to plaintiff's counsel.

2. **<u>JOHN SPENCER, C.I.H.</u>**
   Environmental Profiles, Inc.
   8805 Columbia 100 Pkwy
   Columbia, Maryland 21045

   Mr. John Spencer is a Certified Industrial Hygienist and Certified Safety Professional. He may provide testimony regarding his experience with and/or his testing of this defendant's products or similar types of products, where applicable. He may testify regarding exposure assessments performed on pumps or similar products, including assessments and testing he has performed on these various asbestos-containing materials, where applicable. He may also rely on the testing performed by other certified industrial hygienists and other data and literature available on these various asbestos-containing materials.

   He may quantify plaintiff/decedent's exposure to the asbestos-containing products of this defendant, as alleged, as well as exposures to asbestos-containing products manufactured by other companies, and provide opinions regarding the significance of each exposure. He has also reviewed and may rely upon air sampling data and other literature regarding exposure to other asbestos-containing products. He may discuss historical uses of this defendant's products and other companies' asbestos-containing products and how they are manufactured.

   Mr. Spencer may give testimony on the typical methods for installation and maintenance of pumps and similar products. He may also provide testimony regarding the manner in which this defendant's asbestos-containing products that are the subject of this case are used in the workplace or other alleged exposure setting. He may provide testimony about the type of asbestos fiber and other fiber used in a Stearns product as applicable to this case. He will also provide opinions and testimony regarding exposure from this defendant's products during reasonably foreseeable use or uses as alleged by plaintiff.

   He may discuss ambient air exposure to asbestos, the sources of ambient air asbestos exposure, quantification studies and the presence of asbestos in drinking water and provide his opinion that these common daily exposures are not harmful or hazardous. He may discuss reentrainment and fiber drift.

   He may further provide testimony about the role of the industrial hygienist in assessing risk, generally, and with respect to asbestos-containing products. He may provide current and historical information regarding air and dust sampling methods and counting methods for asbestos in occupational settings, including, but not limited to,

NIOSH (7400 and 7402), EPA, AHERA and ASTM methods. He may provide expert testimony on the proper use and application of all such methodology. He may also provide testimony regarding the proper and improper methods for occupational sampling of asbestos.

Mr. Spencer may also provide testimony about the state of the art of the environmental engineering field. He may testify regarding methods for controlling dust hazards in the workplace; the development and acceptance of standards, including but not limited to those promulgated by the U.S. Public Health Service, NIOSH, the American Conference of Governmental Industrial Hygienists, the Walsh-Healey Act of 1952, the Occupational Safety and Health Administration, and the Environmental Protection Agency.

He may also provide testimony that the use of Tyndall lighting methods or similar artificial lighting methods do not accurately depict an exposure to an asbestos-containing product and further do not demonstrate which fibers depicted are respirable or even contain asbestos. It is his opinion that this type of demonstration is improper, inaccurate, misleading and distorts the use of and exposure to a given asbestos-containing product.

In addition, Mr. Spencer may testify that, based upon the state of the scientific and medical art and industrial hygiene, it is unlikely that plaintiff/decedent was exposed to asbestos, if at all, in excess of the then applicable threshold limit values of the American Conference of Governmental Industrial Hygienists (ACGIH) or the then applicable permissible exposure limits of the United States Occupational Safety and Health Administration (OSHA) from use or operation of a Stearns industrial brake. Consequently, Mr. Spencer will opine it was not unreasonable, as of that time, for a company like Stearns to not have knowledge that an individual was at risk or to not take actions to warn individuals that they were at risk of contracting asbestos-related diseases or to not take other steps to protect plaintiff/decedent from the risk of contracting asbestos-related diseases.

He may also provide testimony regarding historical literature and other applicable government regulations of asbestos and their importance to this defendant's products at issue. Specifically, he may provide testimony regarding the history, state of the art and knowledge of the industrial hygiene profession including the historical development of various air sampling techniques, methods of work place assessment and the state of knowledge of these matters at various times during, prior and since plaintiff/decedent's alleged asbestos exposure. This will include the development of knowledge regarding product testing and emission properties, development of knowledge about asbestos exposure, product warnings, dust analysis equipment and techniques, and/or documentary evidence relevant to evaluation of plaintiff/decedent's asbestos exposure.

Mr. Spencer's testimony will be based upon his education, training and experience and upon his review of the applicable scientific and medical literature, the parties'

3

responses to written discovery, and the deposition testimony of plaintiff/decedent, defendant(s), and witnesses; and the medical records of plaintiff/decedent. He may also review the testimony and work product of plaintiff's expert witnesses and the deposition testimony and documents relative to manufacturers of asbestos-containing products. Mr. Spencer is expected to testify consistent with his opinions contained in his report, attached hereto as Exhibit A.

3. **DAVID WEILL, M.D.**
   Principal
   Weill Consulting Group
   533 Audubon Street
   New Orleans, LA 70118

   Dr. David Weill is the Principal of Weill Consulting Group. He is board certified in pulmonary and critical care medicine. He is a former physician, surgeon and Professor of Medicine at Stanford University, School of Medicine in Palo Alto, California. He is also the former Director for the Center of Advanced Lung Diseases and Medical Director of the Lung and Heart-Lung Transplant program at Stanford University Medical Center.

   Dr. Weill may testify concerning the medical condition of plaintiff/decedent and may give testimony as to the cause of death. He may further testify as to whether plaintiff/decedent had a condition or illness caused by asbestos exposure. He may also testify on the latency period related to each type of asbestos-related disease and the carcinogenic properties of each different type of asbestos fiber.

   Dr. Weill may also testify regarding asbestos-containing products generally, including their asbestos fiber content, manufacture, use and their respective ability to cause or contribute to disease. He may testify specifically regarding the content and fiber type of the asbestos-containing products to which plaintiff/decedent was exposed. He may also testify regarding the determination of the relative risks of suffering personal injury or death as a result of exposure to various asbestos-containing products in various settings including those alleged by plaintiff/decedent. He may explain the dose response relationship between exposure to asbestos and asbestos-related disease for each type of disease alleged.

   Dr. Weill may provide an opinion that the foreseeable use, installation, repair or maintenance of any Stearns product during a human life span cannot produce an appreciable risk of any asbestos-related disease and cannot cause or contribute to any asbestos-related disease. He has reviewed industrial hygiene tests and literature regarding the installation and removal of packing and gaskets. These tests include those performed by F. Boelter, J. Spencer, F. Toca, D. Paustenbach, L. Liukonen, and others. He may testify regarding the ability of the asbestos exposure levels cited in these studies and others to cause or to contribute to the development of any asbestos related disease the plaintiff/decedent may have.

4

Dr. Weill may also testify regarding the existence or non-existence of any alleged asbestos-related disease in the plaintiff/decedent, including but not limited to pleural changes, asbestosis, lung cancer, mesothelioma, laryngeal cancer, esophageal cancer, and gastrointestinal cancer, or other forms of cancer, where applicable. He will also testify on general medicine issues regarding asbestos-related diseases including, but not limited to, lung physiology, lung function, lung defense mechanisms and the mechanisms by which asbestos fibers do or do not cause a particular disease.

Dr. Weill may also provide testimony on the medical literature dealing with the history of the development, diagnosis and knowledge of the asbestos-related disease. This testimony may include detailed information about regulations promulgated by various agencies concerning dusts and asbestos. He may also testify that background levels of asbestos fibers in human tissue do not represent disease and background or ambient air exposure does not cause disease. He may further testify as to the existence and quantification of threshold levels of exposures below which the different types of asbestos fibers have not been shown to cause the various types of asbestos-related disease in humans. He will further testify that any asbestos-related disease allegedly suffered by plaintiff/decedent was not proximately caused by exposure to this defendant's products.

Dr. Weill may also testify on increased risk of cancer issues and whether a particular plaintiff/decedent has a reasonable fear of cancer due to exposure to asbestos. He may also testify on the health consequences of smoking and the relationship between smoking and alleged asbestos-related diseases, generally and with respect to this plaintiff/decedent. He will testify regarding the contribution of smoking and asbestos to this plaintiff/decedent's disease. He may also testify as to whether the plaintiff/decedent suffers from other diseases or conditions unrelated to asbestos exposure, and the impact of such disease or conditions on functional impairment or disability or life expectancy. He may also testify as to whether the plaintiff/decedent suffers from other diseases or conditions unrelated to asbestos exposure, and the impact of such disease or conditions on functional impairment or disability or life expectancy.

Dr. Weill may also testify regarding government regulations applicable to this defendant's products and whether these products are unreasonably dangerous. It is also his opinion that the non-occupationally exposed general public is not at risk for the development of an asbestos-related condition or disease, even though there is asbestos in the ambient air. Thus, because of the large dose needed to cause an asbestos-related disease, a single asbestos fiber cannot cause or contribute to disease.

Generally and with respect to a particular plaintiff/decedent, he may testify as to his review and interpretation of x-ray films, review and interpretation of pulmonary function testing, the nature and extent of any impairment or disability, whether a condition is progressive and whether other diseases or conditions are present in plaintiff/decedent.

5

Dr. Weill's testimony will be based on his training, experience, education and review of the medical literature concerning asbestos disease and related matters, as well as the plaintiff/decedent's records and relevant deposition testimony. Dr. Weill is expected to testify consistent with his opinions contained in his report, attached hereto as Exhibit B.

4. **TIM OURY, M.D.**
   University of Pittsburgh
   School of Medicine
   S-737 Scaife Hall
   3550 Terrace Street
   Pittsburgh, PA 15261

   Dr. Tim Oury is a board certified pathologist and may generally testify concerning asbestos-related diseases and the effects of exposure to various asbestos-containing products upon persons in occupational settings. He may further testify regarding the epidemiology of asbestos-related diseases, the criteria for diagnosis of asbestos-related disease, as well as the existence of a dose response relationship between exposure to asbestos and asbestos-related diseases. He may provide testimony about whether plaintiff/decedent suffers from an asbestos-related disease.

   Dr. Oury may also testify regarding asbestos-containing products generally, including their asbestos fiber content, manufacture, use and their respective ability to cause or contribute to disease. He may also testify regarding the determination of the relative risks of suffering personal injury or death as a result of exposure to various asbestos-containing products in various settings. He may explain the dose response relationship between exposure to asbestos and asbestos-related disease for each type of disease alleged.

   Dr. Oury may provide an opinion that the foreseeable use, installation or operation of a Stearns product as described by plaintiff/decedent or other witnesses cannot produce an appreciable risk of any asbestos-related disease and cannot cause or contribute to any asbestos-related disease.

   Dr. Oury may also testify regarding the existence or non-existence of any alleged asbestos-related disease in the plaintiff/decedent, including but not limited to pleural changes, asbestosis, lung cancer, mesothelioma, laryngeal cancer, esophageal cancer, and gastrointestinal cancer, or other forms of cancer, where applicable. He may also testify on general medicine issues regarding asbestos-related diseases including, but not limited to, lung physiology, lung function, lung defense mechanisms and the mechanisms by which asbestos fibers do or do not cause a particular disease. He may also testify that background levels of asbestos fibers in human lung tissue do not represent disease and background or ambient air exposure do not cause disease. He may further testify as to the existence and quantification of threshold levels of exposures below which the different types of asbestos fibers have not been shown to cause the various types of asbestos-related disease in humans. He may further testify

6

that any asbestos-related disease allegedly suffered by plaintiff/decedent was not proximately caused by exposure to this defendant's products.

He may also testify regarding government regulations applicable to defendant's products and whether these products are unreasonably dangerous. It is also his opinion that the non-occupationally exposed general public is not at risk for the development of an asbestos-related condition or disease, even though there is asbestos in the ambient air. Thus, because of the large dose needed to cause an asbestos-related disease, a single asbestos fiber cannot cause or contribute to disease.

He may also testify on the health consequences of smoking and the relationship between smoking and alleged asbestos-related diseases, generally and with respect to this plaintiff/decedent. He may also testify as to whether the plaintiff/decedent suffers from other diseases or conditions unrelated to asbestos exposure, and the impact of such disease or conditions on functional impairment or disability or life expectancy.

If lung tissue is available, Dr. Oury may conduct a lung tissue fiber burden analysis to determine the quantity and types of fibers (including uncoated fibers) found in plaintiff/decedent's lungs. Dr. Oury may opine on the significance of his findings.

Dr. Oury's testimony will be based on one or more of the following: his training, experience, education, publications and review of the medical, governmental and scientific literature and various air sampling studies, work facility inspections and documents, where applicable, as well as review of medical records, fiber burden or digestion studies performed by him or another doctor, chest films, and all pathology materials. Dr. Oury may rely upon the exhibits, testing and testimony otherwise disclosed by this defendant in this case. Dr. Oury may review plaintiff/decedent's and co-worker's(s') deposition testimony given in this case and rely upon them as a basis for his opinions. He may also provide testimony consistent with the disclosure of any other expert disclosed by this defendant or any other party to this case. As this defendant becomes aware of additional facts and the opinions of plaintiff's experts, Dr. Oury will testify as to the opinions suggested by the additional facts or in response to the opinions of plaintiff's experts. Dr. Oury is expected to testify consistent with his opinions contained in his report, attached hereto as Exhibit C.

5. JAMES COVIL (Corporate Representative to Covil Insulation.

6. JOHN MCCORMICK (Corporate Representative to McNeil & NRM, Inc.)

7. TOM HAMMOND (Corporate Representative to McNeil & NRM, Inc.)

8. Stearns specifically reserves the right to call any witness listed by any party, either live or by deposition or previous trial testimony or who may have been called to testify in this case for the purpose of impeachment, rebuttal, or any other purpose the law allows.

9. Stearns specifically reserves the right to adopt the testimony and reports of any and all experts identified by plaintiff/decedent or other defendants in this case, to the extent

the testimony of said expert is not inconsistent with the defenses asserted by Stearns.

10. Stearns reserves the right to call as fact or expert witnesses any physicians, nurses, and other medical/paramedical and technical personal who treated, examined and/or rendered care to plaintiff/decedent. Stearns does not stipulate to the qualifications of same.

11. Any other witness necessary to publish demonstrative evidence to the jury;

12. Stearns reserves the right to use any deposition taken in this action.

13. Stearns further reserves the right to substitute witnesses in the event the witness(es) named herein are unable to appear at trial.

14. Stearns also reserves the right to identify later additional witnesses to testify about punitive damages, if punitive damages become an issue at trial.

15. Stearns reserves the right to call any additional witnesses that may be necessary after considering the evidence presented at trial.

16. Stearns reserves the right to supplement this witness designation and respond to any subsequent designations by plaintiff.

ii. **THE DESIGNATION OF THOSE WITNESSES WHOSE TESTIMONY THE PARTY EXPECTS TO PRESENT BY DEPOSITION AND, IF NOT TAKEN STENOGRAPHICALLY, A TRANSCRIPT OF THE PERTINENT PARTS OF THE DEPOSITION.**

*See* Stearns Page and Line Designations, attached as Exhibit D.

iii. **AN IDENTIFICATION OF EACH DOCUMENT OR OTHER EXHIBIT, INCLUDING SUMMARIES OF OTHER EVIDENCE-SEPARATELY IDENTIFYING THOSE ITEMS THE PARTY EXPECTS TO OFFER AND THOSE IT MAY OFFER IF THE NEED ARISES.**

*See* Stearns Exhibit List, attached as Exhibit E.

This the 4th day of September, 2018.

    /s/ Peter A. Santos  
    Peter A. Santos, NC Bar No. 32040  
    Gary L. Beaver, NC Bar No. 10244  
    NEXSEN PRUET, PLLC  
    P.O. Box 3463  
    Greensboro, NC 27402  
    Telephone: 336.387.5142  
    Fax: 336.387.8902  
    psantos@nexsenpruet.com  
    gbeaver@nexsenpruet.com  
    *Attorneys for Defendant Rexnord Industries, LLC for its Stearns business*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2018, the foregoing RULE 26(a)(3) Pre-Trial Disclosures for REXNORD INDUSTRIES, LLC on behalf of its Stearns business was served on all counsel of record by electronic mail.

This the 4th day of September, 2018.

/s/ Peter A. Santos
Peter A. Santos
*Counsel for Defendant Rexnord Industries, LLC for its former Stearns business*