IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANN FINCH, Individually and as the Executrix of the Estates of Franklin Delanor Finch, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:16-CV-1077 |
| COVIL CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

A year after Ann Finch obtained a judgment against Covil Corporation, one of Covil's insurers, Zurich American Insurance Company, filed the pending motions to intervene and set aside the judgment. Zurich relies on court orders entered decades ago in a proceeding Zurich knew about. Its motion to intervene and Rule 60(b)(2) motion are not timely. Zurich's Rule 60(b)(4) motion is entirely dependent on a factual assertion the Court rejects and otherwise supported by a chain of weak legal arguments about a statute of repose and subject matter jurisdiction. The requirements for diversity jurisdiction existed at all times, which Zurich does not dispute. The motions will be denied.

## I.    OVERVIEW OF THE ISSUES

In 2016, Ann and Franklin Finch sued Covil for personal injuries and damages resulting from Mr. Finch's exposure to asbestos-containing products sold by Covil. *See* Doc. 524 at 1. When Mr. Finch died from the mesothelioma caused by asbestos

exposure, a wrongful death claim was added. After a five-day trial in October 2018, the jury awarded $32.7 million in compensatory damages. *Id.* The Court entered a final amended judgment for $30.3 million on May 1, 2019. Doc. 525. The verdict was upheld on appeal. Doc. 578; *Finch v. Covil Corp.*, 972 F.3d 507 (4th Cir. 2020).

Non-party Zurich American Insurance Company, successor to one of Covil's insurers, filed the pending motions on May 1, 2020, asserting that in mid-April 2020, it discovered previously unavailable evidence likely to produce a new outcome if the case were reopened and that voids the judgment. Doc. 542 at 2, 5. Zurich moves to intervene pursuant to Federal Rule of Civil Procedure 24, Doc. 541, and to set aside the judgment pursuant to Federal Rule of Civil Procedure 60(b)(2) and 60(b)(4). Doc. 542.

Zurich asserts that (1) it recently learned of court orders entered in a 1991–92 receivership judicially dissolving Covil and from which Zurich infers that the receiver published a statutorily-compliant notice of dissolution; (2) a statute enacted after Covil was dissolved bars lawsuits filed more than ten years after the required notice of dissolution was published; (3) this statute of repose applies to Ms. Finch's claims; and (4) the statute of repose is jurisdictional. As a result, Zurich says, Ms. Finch's judgment against Covil is void for lack of subject matter jurisdiction. Zurich admits it knew about the 1991 receivership at all relevant times, but it denies that it knew about the court orders related to judicial dissolution.[1]

---

[1] In its Rule 24 and Rule 60 motions, Zurich did not forthrightly acknowledge that it had been aware of the 1991 receivership for years. *See* Docs. 537, 538. Upon filing of the motion, the receiver quickly filed overwhelming documentary evidence that Zurich had long known of

2

Covil, acting by a new receiver appointed after the Finch verdict, is aware of the facts and theories underlying Zurich's arguments and has directed its counsel not to file a Rule 60(b) motion. The receiver for Covil believes the statute of repose and jurisdictional defenses Zurich raises are not legally or factually supported. *See* Doc. 571. Ms. Finch also contests Zurich's factual and legal arguments, Docs. 559, 572, and further contends that the motions are not timely. *See*, *e.g*., Doc. 559.

Rule 24 of the Federal Rules of Civil Procedure authorizes non-parties to intervene under several specific circumstances. The motion to intervene must be timely, whether intervention is of right under Rule 24(a)(2) or permissive under Rule 24(b)(1)(B), and must comply with the specific requirements of each subsection. *Alt v. U.S. EPA*, 758 F.3d 588, 591 (4th Cir. 2014).

Federal Rule of Civil Procedure 60(b) allows a court to "relieve a party . . . from a final judgment" on a limited number of specific grounds. Fed. R. Civ. P. 60(b). Rule 60(b)(2) requires the movant to make a threshold showing of, *inter alia*, timeliness and a meritorious defense, *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993); *accord Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017), and then show "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial

---

the 1991 receivership. *See generally* Doc. 553. After the Court directed Zurich to clarify its arguments and factual support for its contentions, *see* Doc. 565, Zurich conceded that it knew about the 1991 receivership at all relevant times. *See* Doc. 569 at 1–2. For ease or reading here and throughout this Order, the Court uses "Zurich" as shorthand for "Zurich and its predecessor."

under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).  Rule 60(b)(2) motions must be filed within a reasonable time and in any event within a year of judgment.  Fed. R. Civ. P. 60(c)(1).

Rule 60(b)(4) authorizes relief if the movant shows that "the judgment is void." Fed. R. Civ. P. 60(b)(4).  When a defendant appears in a lawsuit and defends the case through final judgment, that litigant, or someone standing in that litigant's shoes, can only succeed on a Rule 60(b)(4) motion based on lack of subject matter jurisdiction if the jurisdictional error is egregious and there was no arguable basis for jurisdiction.  *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 221–222 (4th Cir. 2019).  Even if the defendant has not appeared, the subject matter jurisdiction argument must ultimately have merit.  *See*, *e.g.*, *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1181 (D.C. Cir. 2013) (holding that the district court "properly applied the traditional definition of voidness," which turned on whether the court, in fact, lacked subject matter jurisdiction, where the movant had never appeared in the proceedings).

## II.     FACTS

The Court finds the facts based on the evidence submitted, or relied upon, by Covil, the undisputed procedural history and facts of record, and Covil's admissions.[2]  To a limited extent, and to the extent appropriate in the exercise of its discretion, the Court

---

[2] Some of Zurich's factual assertions are contested, and if it were necessary to resolve those factual disputes Ms. Finch and the receiver would likely be entitled to discovery on exactly what Zurich knew and when it knew it.  In light of the cost and questions of privilege such discovery would raise, the Court limited briefing to questions that could be resolved without discovery, including whether Zurich's evidence of timeliness and due diligence is persuasive and sufficient on its own and on other legal and factual issues related to the statute of repose defense.  The Court has not considered any of the evidence offered by Ms. Finch or Covil, unless Zurich also relied upon it.

4

has taken judicial notice of the proceedings in a coverage case between Zurich and Covil which is also pending in this district. The facts are stated here and elsewhere in the order as the need arises.

Covil Corporation, a South Carolina company, sold insulation products for many years, some of which contained asbestos. *Finch*, 972 F.3d at 512. Zurich's predecessor provided insurance coverage to Covil for some of those years, Doc. 541 at 4, *see generally Zurich Am. Ins. Co. v. Covil Corp.*, No.18-cv-932 (M.D.N.C.), including years when Mr. Finch was exposed to asbestos-containing products sold by Covil. Doc. 541 at 5; *see generally Zurich Am. Ins. Co.,* No.18-cv-932 (M.D.N.C.).

In 2016, Mr. Finch, a North Carolina resident, developed mesothelioma caused by the asbestos exposure. *Finch*, 972 F.3d at 511. He and his wife sued Covil and other defendants in 2016, *see* Doc. 1, and his wife added a wrongful death claim after he died from mesothelioma in January 2017. Doc. 65; *Finch*, 972 F.3d at 510.

In its answer to the operative complaint, Covil asserted, *inter alia*, that Ms. Finch's claims were barred by "the statutes of limitation and repose," Doc. 156 ¶ 68, and that the Court lacked subject matter jurisdiction. *Id.* at ¶ 74. But it admitted the facts necessary to establish subject matter jurisdiction under the diversity statute, *id.* at ¶ 3, and it never filed a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment based on any statute of repose or on lack of subject matter jurisdiction. It never made a motion for judgment as a matter of law based on a statute of repose or lack of subject matter jurisdiction. And it never mentioned a statute of repose or subject matter jurisdiction in its post-trial motions to set aside the verdict.

5

Zurich was aware of the lawsuit filed by Ms. Finch and was involved in Covil's defense. *See generally Zurich Am. Ins. Co.,* No.18-cv-932 (M.D.N.C.). Zurich did not seek to intervene before judgment was entered against Covil or before Covil appealed.

The jury decided in favor of Ms. Finch, and final judgment was entered in her favor and against Covil on May 1, 2019. Doc. 525. Fairly quickly after the verdict, a South Carolina court appointed a new receiver for Covil. *See generally Zurich Am. Ins. Co.*, No.18-cv-932 (M.D.N.C.).

Some months after final judgment, new lawyers for Zurich revisited the history of Covil's dissolution. *See* Doc. 538-10. Over the course of the next few months they obtained copies of court records from the 1991 receivership. *See* Docs. 538-3; 538-4. These records show that:

- ■ In October 1991, Covil ceased operations and a South Carolina state court appointed a receiver of Covil's property. Doc. 538-3; *see also* Doc. 538-4 (November 1991 order appointing receiver).

- ■ In May 1992, in the same case, on motion by the receiver, the court expanded the receivership, Doc. 538-6 at p. 4, ¶ 3, judicially dissolved Covil, *id.* at p. 4, ¶ 1, and directed the receiver to undertake a long list of actions, including publishing the notice of dissolution required by § 33-14-107 of the Code of Law of the State of South Carolina. *Id.* at p. 7, ¶ 9.

- ■ In November 1992, the court entered an order finding that the receiver "has fully complied with the previous Orders of this Court in liquidating [Covil's] assets." Doc. 538-7 at 4.

6

■ In December 1992, the court discharged the receiver. Doc. 538-8 at p. 3, ¶ 8.

Covil was administratively dissolved by the secretary of state in the summer of 1993. Doc. 563-2 at 5–6; Doc. 569 at 2–3.

No one who works for Zurich or who worked for its predecessor has testified that Zurich was unaware of the judicial dissolution at or near the time of the dissolution, at or near the time Ms. Finch filed this lawsuit, or at any point in between.[3] In its reply brief, Zurich provided deposition testimony from a lawyer, Daniel White, hired by the insurers to defend Covil during the relevant timeframe. *See* Doc. 569 at 2 (citing Doc. 563-2); *see generally Zurich Am. Ins. Co.,* No.18-cv-932 (M.D.N.C.). Mr. White testified that he was unaware of the judicial dissolution before 2020. Doc. 563-2 at 4. The fact that a lawyer representing Covil was unaware of the judicial dissolution does not establish that Zurich was unaware of the judicial dissolution.[4]

It is undisputed that Zurich knew about the 1991 receivership and Covil's administrative dissolution at or near the time each occurred. Doc. 569 at 2; *see* Doc. 538-10 at p. 5, ¶ 5 (a 1994 internal memorandum in Zurich's files mentions the receivership). No one has asserted and there is nothing on the face of the later orders related to the judicial dissolution to indicate they were sealed. The receivership orders, including the

---

[3] The only affidavits or declarations Zurich initially submitted are from counsel retained after the Finch judgment was entered.

[4] Zurich implicitly equates Mr. White's lack of knowledge of the judicial dissolution to Zurich's lack of knowledge. *See* Doc. 569 at 2. But in another brief in a related case, Zurich has emphasized that correspondence to Mr. White does not constitute correspondence to Zurich. *See Zurich Am. Ins. Co.,* No.18-cv-932 (M.D.N.C.) (Doc. 353 at 11). Zurich cannot have it both ways. In any event, the Court need not decide the specific nature of Mr. White's representation.

7

judicial dissolution orders, were publicly available.  Zurich presented no evidence that it undertook any examination of the public court records concerning the receivership at any point before judgment was entered against Covil.

In the absence of any evidence from anyone at Zurich about what it knew and what it did before late 2019 – evidence which is completely within Zurich's control – it is a fair inference, and the Court finds, that Zurich either knew about the judicial dissolution or, if it did not, that Zurich did not look at the public receivership records or ask anyone to look at those records until well after the Finch judgment was entered.

In 1992, when Covil was judicially dissolved, and in 1993 when it was administratively dissolved, S.C. Code Ann. § 33-14-106 provided several mechanisms for a dissolved corporation to "dispose of the known claims against it" by, *inter alia*, notifying known claimants in writing.  S.C. Code Ann. § 33-14-106(b) (1988).  This section explicitly does not apply to contingent liabilities or claims based on events occurring after dissolution.  § 33-14-106(d).  There is no contention that Mr. Finch received written notice pursuant to § 33-14-106, and the Court finds that he did not.

For unknown claims, the 1992–93 version of § 33-14-107(c) includes a publication requirement.  Specifically, the statute provided that:

> If the dissolved corporation publishes a newspaper notice in accordance with subsection (b), the claim of each of the following claimants is barred unless the claimant commences a proceeding to enforce the claim against the dissolved corporation within five years after the publication date of the newspaper notice:
>
>> (1) a claimant who did not receive written notice pursuant to Section 33-14-106;

8

                (2) a claimant whose claim was timely sent to the dissolved corporation but not acted on.

§ 33-14-107(c) (1988); Doc. 572-1. Zurich did not include copies of any such publication notices or any other direct evidence that Covil's receiver published a newspaper notice with its motions, *see* Doc. 576 at 3 (conceding it has not located any published notice), much less that any such notice included the information required by § 33-14-107(b).[5] The accounting filed by the receiver shows the receiver did not incur any expense to publish a notice. *See* Doc. 538-7 at 5–6; Doc. 538-8 at 7–8. The Court finds that the receiver did not publish a notice in compliance with § 33-14-107(b).

In 2004, § 33-14-107 was amended to include a third basis for a time bar, which is also subject to the publication requirement. It added a ten-year bar against "a claimant whose claim is contingent or based on an event occurring after the effective date of the dissolution." § 33-14-107(c)(3) (2004). There is no evidence that Covil published a notice of dissolution after the 2004 provision was enacted, and the Court finds that it did not.

None of these three bars in § 33-14-107(c) preclude claims "against the dissolved corporation to the extent of its undistributed assets." § 33-14-107(d)(1).

---

[5] Section 33-14-107(b) requires that the notice "(1) be published once in a newspaper of general circulation in the county where the dissolved corporation's principal office . . . is or was last located; (2) describe the information that must be included in a claim and provide a mailing address where the claim may be sent; and (3) state that a claim against the corporation is barred unless a proceeding to enforce the claim is commenced within five years after the publication of the notice." § 33-14-107(b).

Case 1:16-cv-01077-CCE-JEP   Document 589   Filed 10/14/20   Page 9 of 23

## III. DISCUSSION

### A. <u>The Motion to Intervene</u>

When seeking to intervene as of right under Rule 24(a)(2) or with permission under Rule 24(b)(1)(B), the intervenor must show the motion is timely. *Alt*, 758 F.3d at 591. In exercising discretion to determine whether a proposed intervenor has met the timeliness requirement for both forms of intervention, courts evaluate three factors: "[F]irst, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Id.*

"[T]imeliness is a cardinal consideration of whether to permit intervention." *Houston Gen. Ins. Co. v. Moore,* 193 F.3d 838, 839 (4th Cir. 1999).[6] The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal. *United States v. S. Bend Cmty. Sch. Corp.,* 710 F.2d 394, 396 (7th Cir.1983), cited with approval in *Scardelletti v. Debarr*, 265 F.3d 195, 203 (4th Cir. 2001), *rev'd on other grounds, Devlin v. Scardelletti*, 536 U.S. 1, 6 (2002). That is exactly what Zurich wants to do here.

First, the underlying suit has progressed almost as far as possible: judgment has been entered and, shortly after the motion to intervene was filed, it was affirmed on

---

[6] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

Case 1:16-cv-01077-CCE-JEP   Document 589   Filed 10/14/20   Page 10 of 23

appeal.  *Finch*, 972 F.3d 507 (4th Cir. 2020).  If the underlying suit is at a "relatively advanced stage," that counsels against granting intervention.  *Alt*, 758 F.3d at 591.

Second, the prejudice to Ms. Finch is extreme.  She has spent the time, money, and mental energy needed to prosecute a successful personal injury and wrongful death claim through protracted discovery, summary judgment, trial, and appeal, only to be faced with a last-minute argument about a retroactive statute of repose.  There is even prejudice to Covil and its receiver, who must spend valuable time dealing with this case instead of other matters requiring their attention.[7]  If a belated intervention would cause delay and would require the parties to "expend extra effort," this too weakens the argument for intervention.  *Id.*

Third, Zurich, which has been involved with the defense of lawsuits against Covil for decades, has not provided any reason why it did not fully investigate the subject matter jurisdiction implications of the 1991 receivership back in the 1990s, or after Ms. Finch filed suit, or before final judgment, or any point in between.  And a non-litigant's strategic choice not to intervene earlier is an appropriate factor to consider against allowing intervention.  *See id.* at 591–92

Zurich points to evidence of old court orders recently located by its new lawyers, who undertook a detailed investigation into Covil's corporate status several months after the verdict was entered.  Assuming Zurich did not know about the judicial dissolution

---

[7] The records in this case and in insurance coverage litigation also pending in this court are replete with references to litigation between and among Covil, various insurers, previous defense counsel, and persons allegedly injured by asbestos-containing products that Covil sold.

until recently, Zurich admits it was aware of the 1991 receivership at or around the time the receiver was appointed, and it offers no explanation for its failure to review those public court records in a timely fashion. While Zurich has shown that the court orders were difficult to track down in late 2019 and 2020, it has not shown that the orders were unavailable. Indeed, once Zurich's new lawyers started looking, they found them within a few months. *See generally* Doc. 538-10. Zurich presents no evidence that the records it now claims are recently discovered were inaccessible when Ms. Finch filed suit or before judgment, or that it was somehow impeded or prevented from exploring the subject matter jurisdiction implications of the orders entered by the receivership court.

Trial courts are directed to construe Rule 24 liberally to allow intervention where appropriate. *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986). "Liberality does not, however, entail resolving every possible doubt in favor of intervention." *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 16 (S.D.W. Va. 2015) (citing 7C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure Civil* § 1497 (3d ed. Apr. 2015)). Zurich has known for almost thirty years that a South Carolina court appointed a receiver for its insured. And despite the obvious potential for defenses arising from the receivership, Zurich failed to examine the court file for decades. It cannot now rely on court orders from that file in order to intervene in a lawsuit against its insured that has moved well past final judgment.

Zurich bears the burden of showing that its motion to intervene is timely. *See*, *e.g.*, *Thomas v. Andino*, 335 F.R.D. 364, 368 (D.S.C. 2020); *S.C. Coastal Conservation*

12

*League v. Pruitt*, No. 18-CV-330-DCN, 2018 WL 2184395, at *3 (D.S.C. May 11, 2018).

Zurich has not done so. The motion to intervene will be denied as untimely.

### B. **The Rule 60(b) Motion**

Because the Rule 24 motion is denied for lack of timeliness, the Rule 60(b) motion should also be denied since Zurich is not a party. In the alternative, the motion will be denied on its merits.

#### 1. *Rule 60(b)(2)*

Zurich seeks relief pursuant to Rule 60(b)(2) on the grounds that the court orders constitute new evidence. To prevail, Zurich must make a threshold showing of (1) timeliness, (2) a meritorious defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances. *Dowell*, 993 F.2d at 48. It must then meet the five requirements of Rule 60(b)(2) by showing that "(1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended." *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989).

The movant bears the burden of showing timeliness, *Moses v. Joyner*, 815 F.3d 163, 166 (4th Cir. 2016), which courts evaluate in their discretion. *Id.* at 166; *Werner v. Carbo*, 731 F.2d 204, 206 (4th Cir. 1984). To be timely, the movant must show that the motion is made "within a reasonable time" and "no more than a year after the entry of the judgment." Fed. R. Civ. P.60(c)(1). Even if the motion is filed within a year of

13

judgment, denial is appropriate when the movant gives "no valid reason . . . for the delay." *See, e.g.*, *McLawhorn v. John W. Daniel & Co.*, 924 F.2d 535, 538 (4th Cir. 1991); *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 253 (4th Cir. 1974).

Zurich's motion based on Rule 60(b)(2) fails for several reasons. The Court need discuss only three, though there are others.

First, Zurich has not shown that the motion is timely. As previously discussed, *see supra* at 10–12, Zurich has offered no valid reason for its delay in investigating whether the receivership would provide a basis for a defense to this lawsuit.[8] Covil, through lawyers retained by Zurich, even asserted an affirmative defense based on statutes of limitations and repose, *see* Doc. 156 at ¶ 68, but, despite that, there is no evidence that Zurich took even one step to locate evidence in support of this defense until months after the jury verdict. "At every critical juncture," Zurich "slept on its rights." *Wells Fargo Bank, N.A.*, 859 F.3d at 300 (upholding denial of 60(b)(2) motion for untimeliness).

Second, Zurich has not shown that the evidence on which it relies was newly discovered. The "newly discovered evidence" provision of Rule 60(b)(2) authorizes a court to correct erroneous judgments stemming from the unobtainability of evidence. *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994). But "evidence that was available to the movant prior to the entry of judgment as a matter of law cannot be grounds for

---

[8] The Court assumes without deciding that it is Zurich's knowledge and actions that matter here, even though a pretty good argument can be made that it is Covil's knowledge and actions that are determinative. *See* discussion *infra* at 17 (noting that Zurich stands in Covil's shoes). Covil, acting through its receiver, obviously knew in 1992 that Covil had been judicially dissolved.

14

granting a 60(b)(2) motion." *Clayton v. Ameriquest Mortg. Co.*, 388 F. Supp. 2d 601, 609 (M.D.N.C. 2005). Court records available to Zurich for well over two decades cannot be characterized as "newly discovered."

Third, even if these records can be characterized as newly discovered evidence, Zurich's failure to examine them for decades, and not until months after the jury verdict, does not constitute due diligence. If a movant "fails to demonstrate why it could not discover this evidence prior to the [trial] had it exercised due diligence" by not disclosing "what attempts, if any, were made to secure the documents" and the additional evidence consists of documents the movant had access to before the trial, the evidence is "merely newly produced," not newly discovered. *In re Wright*, 186 B.R. 394, 397 (Bankr. D. Md. 1995). Zurich has not shown due diligence, given its failure to even look at publicly available court records for over 25 years despite its knowledge of the proceedings. *Consol. Masonry & Fireproofing v. Wagman Construction Corp.*, 383 F.2d 249. 251 (4th Cir. 1967) (affirming denial of Rule 55 motion, which is subject to the same threshold requirements as Rule 60(b) motions, for untimeliness where the movant negligently relied on others to disclose the information supporting the motion rather than immediately checking the official records at the clerk's office).

Zurich contends the 1992 orders qualify as new evidence because when it searched for them decades later, the court records were destroyed, consolidated, or misfiled. But there is no evidence the court orders were misfiled at the time they were entered. And the single case it cites in support of this view, *Bain v. MJJ Prods., Inc.*, 751 F.3d 642 (D.C. Cir. 2014), simply held that mere "awareness of evidence, standing alone, does not

15

categorically preclude considering the evidence 'newly discovered' under Rule 60(b)(2)"

because categorical treatment would foreclose relief even if the evidence was unavailable

due to circumstances, such as a natural disaster, entirely beyond the party's control.  *Id.* at

647.  Here, there is no showing of a natural disaster or other outside circumstance that

prevented Zurich from reviewing public court files on Covil's receivership, about which

Zurich knew.  Indeed, the *Bain* court upheld the district court's conclusion that where the

plaintiff knew about a letter during trial but made no effort to locate it beyond looking in

her own files, the plaintiff did not act with reasonable diligence.  *Id.* at 647–48.

### 2.  *Rule 60(b)(4)*

A party may seek relief from a final judgment if the judgment is void.  Fed. R.

Civ. P. 60(b)(4).  The concept of a "void order" under Rule 60(b)(4) is narrowly

construed because "of the threat to finality of judgments."  *Wendt v. Leonard*, 431 F.3d

410, 412 (4th Cir. 2005).  Relief under Rule 60(b)(4) is available only if the "judgment is

premised either on a certain type of jurisdictional error or on a violation of due process

that deprives a party of notice or the opportunity to be heard."  *United Student Aid Funds,*

*Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

A judgment is not void simply because it may have been erroneous, and a lack of

subject matter jurisdiction will not always render a judgment void.  *Wendt*, 431 F.3d at

413.  When considering a rule 60(b)(4) motion brought in a case where, as here, a

defendant appeared during the proceedings and had an opportunity to raise the issue and

did raise the issue in its pleadings, the district court is not required to review

16

jurisdictional questions in the same way it would decide a motion to dismiss for lack of subject matter jurisdiction during the underlying litigation. *Hawkins*, 935 F.3d at 221.

Here, Zurich not only provided a defense for Covil during the Finch litigation through verdict, it and other insurers essentially acted for and as Covil in defending that case.[9] Zurich was not deprived of due process and could have directed Covil's counsel, or hired its own counsel, at any time to investigate a subject matter jurisdiction or statute of repose defense, just as it finally did after judgment. Moreover, Zurich is asserting a defense that belongs to Covil, Zurich's liability for the judgment flows from Covil's liability, and Zurich should not have greater or different rights than Covil. Thus, Zurich stands in Covil's shoes.

In this situation, Zurich "must show that there was no arguable basis for subject matter jurisdiction." *Id.* Courts will find a judgment void for lack of subject matter jurisdiction in this context "only in the narrowest circumstances," and it is not enough for the court issuing the judgment to have erred in asserting jurisdiction over the case. *Id.* at 221–22. Rather, the error must be egregious, representing the rare instance of a clear usurpation of power. *Wendt*, 431 F.3d at 413. So long as there was an arguable basis for jurisdiction, the judgment should be upheld. *Hawkins*, 935 F.3d at 221–22.

---

[9] Covil had been administratively dissolved long before the Finch litigation, but Zurich chose to defend in Covil's name and not to intervene when Ms. Finch sued Covil. *See generally Zurich Am. Ins. Co.,* No.18-cv-932 (M.D.N.C.); *see also Penn Nat'l Mut. Cas. Ins. Co. v. Viking Pizza, Inc.*, No. 1:17-CV-1155, 2020 WL 4288280, at *16 (M.D.N.C. July 27, 2020) (discussing North Carolina law allowing an insurer to intervene when counsel retained by the insurer to represent the insured cannot locate the insured or the insured is unresponsive).

17

Here, Zurich contends that a South Carolina statute of repose prevents any court from exercising subject matter jurisdiction over Ms. Finch's claims, which arose after Covil was judicially dissolved in 1992. The argument is based on a South Carolina statute that bars certain claims filed more than ten years after judicial dissolution, if the corporation published a notice of dissolution. While it is undisputed that Mr. Finch was diagnosed with mesothelioma in 2016, well more than ten years after Covil dissolved, Zurich's motion otherwise raises a multitude of disputed questions of fact and unsettled questions of state law.[10]

Specifically, in order to prevail on its argument that the judgment is void, Zurich will have to establish the following:

1. That the receiver published a notice of dissolution in accord with the requirements of § 33-14-107(b), even though Zurich has not offered any affirmative evidence of this fact, such as copies of the newspaper publications, and even though the receiver's accounting shows no money paid to publish any such notices.

   AND

2. That South Carolina courts would interpret § 33-14-107(c), enacted after Covil's dissolution, to bar the claim, even though no South Carolina court has retroactively applied this subsection or has applied it to latent disease claims and other states

---

[10] "[A] federal court sitting in diversity has a duty to apply the operative state law as would the highest court of the state in which the suit was brought." *Liberty Mut. Ins. Co. v. Triangle Indus.*, 957 F.2d 1153, 1156 (4th Cir. 1992). If the South Carolina Supreme Court has not addressed a particular issue, this Court must predict how that court would rule. *See AGI Assocs., LLC v. City of Hickory, N.C.*, 773 F.3d 576, 579 (4th Cir. 2014).

18

with similar provisions have declined to do so. *See Gardner v. Asbestos Corp.*, 634 F. Supp. 609, 612 (W.D.N.C. 1986); *Abrams v. Pneumo Abex Corp.*, 981 A.2d 198, 212 (2009).[11]

<u>AND</u>

3. That Covil's insurance policies issued by Zurich and others do not constitute "undistributed assets" under § 33-14-107(d)(1), even though the law is conflicting in other states that have addressed whether insurance policies are undistributed assets in this context, no South Carolina court has addressed the issue, and the South Carolina Supreme Court has held liability insurance is an undistributed asset in another context. *See*, *e.g.*, *Moultis v. Degen*, 301 S.E.2d 554, 558 (1983).

<u>AND</u>

4. That the time bar in § 33-14-107(b) is jurisdictional rather than a waivable affirmative defense, even though no South Carolina appellate court has held that the statute of repose in § 33-14-107(b) is jurisdictional and even though at least one South Carolina appellate court has treated a different statute of repose as non-jurisdictional. *Dunbar v. Carlson*, 533 S.E.2d 913, 918 (S.C. Ct. App. 2000) (affirming denial of a motion to amend to add a statute of repose defense raised at the close of the plaintiff's evidence at trial, noting that "inexcusable delay, or the

---

[11] In the alternative, Zurich asserts that South Carolina courts would apply the five-year bar in the 1988 version of § 33-14-107 to Ms. Finch's claims. That argument is inconsistent with § 33-14-106's explicit application only to known claimants, which Mr. and Ms. Finch were not.

taking of the adverse party by surprise, or the like" justify denying motions to amend).

AND FINALLY,

5. That there was no arguable basis for subject matter jurisdiction, even though it is and always has been undisputed that Covil and Ms. Finch are citizens of different states and the amount in controversy is over the statutory requirement in 28 U.S.C. § 1332.

In other words, in order to prevail on its Rule 60(b)(4) motion, Zurich will have to establish a chain of improbable facts and unlikely legal conclusions. If it is unsuccessful on even one of these facts or legal positions, its subject matter jurisdiction argument collapses. Zurich's own insured disagrees with Zurich's argument and finds it to be without merit. Doc. 571 at 1. And the South Carolina court overseeing the receivership, presided over by a retired Chief Justice of the South Carolina Supreme Court, has rejected the same arguments. *See Protopapas v. Wall, Templeton & Haldrup, P.A.*, No. 2019-CP-40-02285, and *Hutto v. Covil Corp.*, No. 2019-CP-40-06956 (Richland County Ct. Common Pleas Sept. 25, 2020) (Order Granting Receiver's Motion to Clarify Status of Receivership).

Zurich has put forth various factual and legal arguments to establish its asserted facts and support its views of the law. But Zurich's arguments are certainly not strong enough to establish an egregious jurisdictional error. None are clearly supported by well-established South Carolina precedent, and the case law that exists supports contrary arguments. The mere fact that authorities disagree about the propriety of jurisdiction in a

20

particular context constitutes an arguable basis for the exercise of jurisdiction. *Wendt*, 431 F.3d at 414*; see Hawkins*, 935 F.3d at 226.

Even if the "egregious error" standard does not apply, Rule 60(b)(4) by its terms requires the movant to show that the judgment is, in fact, void, which means here that Zurich must show the court lacked subject matter jurisdiction. *See, e.g., Wells Fargo Bank, N.A.,* 859 F.3d at 299. But the key underlying "fact" on which Zurich's jurisdictional argument depends is that the receiver published the notice of judicial dissolution in the manner required by statute. As the Court found *supra*, Zurich has not shown that such a notice was published, either before Covil was dissolved or after the statute was amended in 2004.

Zurich points to its evidence that the receivership court directed the receiver to publish the notice of dissolution and later found that the receiver had "fully complied with the previous Orders of this Court in liquidating [Covil's] assets," Doc. 538-7 at 4, as establishing an inference that the receiver published the notice. But the receivership court did not make a specific finding that the receiver published the notice, and its findings about compliance in "liquidating assets" are not directed towards barring future claims or towards publication of notices, so any inference is quite weak. Zurich has submitted no evidence from any newspaper showing that the notice was actually published, much less that any published notice met the statutory requirements set by § 33-14-107(b). Any inference of compliance is fully rebutted by the absence of direct proof of publication, which one could reasonably expect to exist, and by the fact that the receiver's accounting does not show he spent any money to publish any such notice.

21

From the beginning, this Court had Article III subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Zurich has presented what can at best be characterized as unsettled points of law and weak factual arguments that do not show a clear "usurpation of power." *Wendt,* 431 F.3d at 413. This is inadequate to establish that there was "no arguable basis for subject matter jurisdiction," which is required for a successful Rule 60(b)(4) motion brought by a party who had the opportunity to challenge subject matter jurisdiction before judgment. *Hawkins*, 935 F.3d at 221.

Even if the Court considered the subject matter jurisdiction argument afresh, it is without merit. The judgment is not void.

## IV.    OTHER MATTERS

Ms. Finch filed a motion to supplement the record to add additional evidence concerning what Zurich knew and when Zurich knew it. Doc. 580. As discussed *supra* n. 2, the Court does not need to resolve this issue. Even if the Court assumes Zurich did not know of the judicial dissolution until 2020, Zurich cannot prevail, so additional evidence from Ms. Finch is unnecessary. Her motion to supplement the record will be denied as moot.

## VII.   CONCLUSION

Zurich knew a receiver had been appointed for its insured and failed to investigate the nature of that receivership, which was all public record, for over twenty-five years. It chose not to intervene in this case when it was filed and instead hired counsel to defend in Covil's name. Now, well after the Court entered judgment, Zurich seeks to intervene to assert a far-fetched jurisdictional argument that it could have investigated and hired

22

lawyers to present well before or immediately after final judgment. Its efforts to intervene and its Rule 60(b)(2) motion are not timely. The subject matter jurisdiction defense Zurich would raise on Covil's behalf does not show an egregious jurisdictional error, and in any event, is without merit. Zurich's motions will be denied.

It is **ORDERED** that Zurich America's motion to intervene, Doc. 537, and for relief from judgment, Doc. 538, are **DENIED**, and the Plaintiff's motion to supplement the record in response to the motion, Doc. 580, is **DENIED**.

This the 14th day of October, 2020.

UNITED STATES DISTRICT JUDGE